UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE GALE RUHL,

    Plaintiff,

v.                                                                         Case No. 1:22-cv-589
                                                                         Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's November 29, 2019 decision determining that plaintiff was overpaid benefits in the amount of $19,888.00 during the period of October 2010 to July 2013.

    **I.**    **Background**

The administrative law judge (ALJ) summarized the procedural background of this case as follows:

> The claimant is an individual who was found disabled pursuant to a fully favorable attorney advisor decision dated March 11, 2010, with an established onset date of June 26, 2008 and eligibility for receipt of disability insurance benefits beginning December 2008 (Ex. B1 and B7). On December 31, 2013, the Social Security Administration issued a notice informing the claimant that she was overpaid Title II benefits in the amount of $19,888.00 due to the receipt of workers' compensation payments (Ex. B8). The notice indicated that the claimant's benefits should have been reduced beginning in October 2010 due to the receipt of workers compensation payments (Ex. B8, p. 2). On February 11, 2014, the claimant filed a request for reconsideration, disputing the facts and the amount of the overpayment (Ex. B11). The claimant's reconsideration request was denied on June 1, 2016 (Ex. B12). Thereafter, the claimant filed a written request for hearing on July 27, 2016 (Ex. B15; 20 CFR 404.929 *et seq*.).

> The record indicates the claimant initially submitted Form SSA-632-BK on June 1, 2016; however, this form was determined not to be valid due to failure to provide necessary information and to sign the document (Ex. B16-B17). The record shows the claimant signed a Form SSA-632-BK on November 13, 2016, prior to a November 28, 2016 deadline provided in an October 21, 2016 letter from the Social Security Administration, although it appears the Form SSA-632-BK was not faxed until February 8, 2017 (Ex. B32). Subsequent to a personal conference on April 19, 2017, the field office denied the claimant's request for waiver on April 25, 2017 (Ex. B33-B35). An additional written request for hearing was filed on October 13, 2017 (Ex. B41, p. 4).
>
> This case is before me on remand from the Appeals Council. The claimant appeared and testified at a hearing held on September 20, 2019, in Grand Rapids, Michigan. Christopher D. Morris, an attorney, represents the claimant.
>
> In its remand order, the Appeals Council directed me to develop good cause for the untimely filing of the request for hearing on waiver and consolidation of the claims regarding the fact and amount of the overpayment as well as the waiver of the overpayment (Ex. B39, p. 3). I was also directed to issue a Notice of Hearing properly identifying the issues before me in accordance with HALLEX I-2-3-15D (Ex. B39, p. 4). In this decision, as demonstrated below, I have addressed the issues set forth in the Appeals Council remand order.
>
> At the time of the prior hearing, the claimant's request for waiver of overpayment recovery, which was filed after the initial written request for hearing, had been denied in a waiver determination following a personal conference (Ex.B 15 and B32-B35). However, the claimant had not filed a request for hearing on the issue of her request for waiver of overpayment recovery. Accordingly, as of August 30, 2017, the date of the prior hearing, I did not have jurisdiction over the claimant's request for waiver of overpayment recovery. On October 13, 2017, more than 60 days after the waiver determination, the claimant untimely filed a request for hearing on the issue of waiver of overpayment recovery (Ex. B35 and B41 ). In its order, the Appeals Council directed me to consolidate the claims regarding the fact and the amount of the overpayment as well as the waiver of overpayment recovery (Ex. B39, p. 3). Accordingly, I find there is good cause for the claimant's untimely filing of her request for hearing on the issue of waiver of overpayment recovery.
>
> On May 21, 2019, I issued a Notice of Hearing in which the claimant was advised the issues being considered were the Appeals Council remand, whether the claimant was overpaid benefits within the meaning of section 204 of the Social Security Act, and whether recovery of the overpayment may be waived (Ex. B42, p. 3). At the hearing, the claimant, by and through her representative, denied having objections with regard to the May 2019 Notice of Hearing.

PageID.32-33.

The ALJ's decision addressed overpayment at issue and plaintiff's arguments made during the administrative hearing as follows:

> In December 2013, the Social Security Administration determined that there should have been an offset of benefits due to workers' compensation received from October 2010 through July 2013 (Ex. B7, pp. 1-3). The offset was calculated pursuant to 80 percent of the claimant's average current earnings, which was based the High One method with a base year of 2007 (Ex. B7, p. 1). The record shows that the weekly rate of $275.43 was used to calculate the offset, which consistent with the claimant's base rate as well as payment rates when there is a dispute and a workers' compensation case is appealed in the State of Michigan (Ex. B2 and B7; *See also* POMS DI 52120.125).
>
> The December 2013 notice of overpayment advised the claimant that she was overpaid by $19,888.00 (Ex. B8, p. 1). It was determined that she should have been paid a reduced amount of Social Security disability benefits from October 2010 through July 2013 due to the receipt of workers' compensation benefits (Ex. B8, pp. 1-2; *See also* Ex. B5, B7, and B12). The notice of overpayment indicated the claimant was payable for the full amount of Social Security disability benefits from entitlement in December 2008 through September 2010 (Ex. B8, p. 1). . . .
>
> Records documenting payments from the Social Security Administration for the period from October 2010 through July 2013 do not show any offset of workers' compensation benefits despite the claimant's receipt of periodic payments during this period (Ex. B2-B4; B20-B21; and B48). . .
>
> The claimant, by and through her representative, argued that the Social Security Administration erred in its treatment of the lump sum settlement, citing to POMS DI 52120.125 (Ex. B3 7, p. 6). As demonstrated above, the overpayment was caused by the receipt of periodic workers' compensation payments during the period from October 2010 through July 2013, of which the Social Security Administration was not made aware until September 2013, rather than the lump sum settlement (Ex. B2-B4; B6-B8; B12; and B48). Consistent with POMS DI 52120.125, the starting date for prorating a lump sum award begins the day after the periodic payments stop. The record demonstrates the claimant's periodic payments ceased on July 29, 2013, the day prior to the initial redemption order (Ex. B3-B4; B7-B8; B12; and B48). Accordingly, the period for prorating the lump sum settlement begins July 30, 2013 (*See* Ex. B48, p. 14). . . .
>
> The claimant's representative has contended that the Social Security Administration erred in calculating the offset when she moved from Michigan to Ohio (Ex. B26). However, there is no evidence of this in the record (*See* Ex. B1-B49). As noted above, in the December 2013 workers' compensation offset datasheet, compiled shortly prior to the initial notice of overpayment, it was

3

acknowledged that the claimant resided in Ohio, but that she had applied for state workers' compensation in Michigan (Ex. B7, p. 2).

PageID.38-39.

## II. LEGAL STANDARD

The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

### III. ALJ's DECISION

The ALJ made three findings in this case.

First, plaintiff was overpaid benefits in the amount of $19,888.00 during the period of October 2010 through July 2013. PageID.35. *See* 20 C.F.R. § 404.504 ("The amount of an overpayment or underpayment is the difference between the amount paid to the beneficiary and the amount of the payment to which the beneficiary was actually entitled.").

Second, plaintiff was at fault for causing the overpayment pursuant to 20 C.F.R. §§ 404.506(a), 404.507, and 404.510(a). PageID.39.

Third, recovery of the overpayment is not waived, and plaintiff is liable for repayment of $19,888.00 during the period October 2010 to July 2013 pursuant to 20 C.F.R. § 404.506. PageID.42.

Accordingly, the ALJ found that "Based on the waiver request filed, the overpayment amount of $19,888.00 is not waived and the claimant is liable pursuant to section 204(a)(1)(A) of the Social Security Act." *Id*.

### IV. DISCUSSION

Plaintiff states that she received workers' compensation under Michigan's workers' compensation system, lived in Ohio at the time of her first workers' compensation settlement, that the ALJ applied the wrong POMS ("Social Security Administration Program Operations Manual System") section in calculating offsets for Michigan workers' compensation benefits received, and that "the Ohio Office of the Commissioner made a simple mathematical error following the incorrect POMS by failing to deduct attorney fees and costs from the gross amount received before making the calculation." Plaintiff's Brief (ECF No. 369-370).

Plaintiff has raised three issues on appeal. Plaintiff's first two claims (§§ IV.A and B) misconstrue the basis of the overpayment at issue in this case as arising from lump sum settlement payments. As the ALJ discussed, the overpayment involved periodic payments made between October 2010 and July 2013, before the lump sum settlement on July 30, 2013.

> **A. Did the Social Security Administration commit reversible error by failing to follow the POMS procedures adopted by the administration for calculating Social Security Title II wage-loss benefits for a claimant who also received State of Michigan workers' compensation wage-loss benefits?**

Plaintiff's first claim of error consist mostly of questions posed regarding whether the agency properly applied the POMS.[1] Plaintiff does not develop a meaningful argument on this issue. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Accordingly, this claim of error is denied.

> **B. Did the ALJ and Appeals Council commit reversible error in failing to deduct the expenses and attorney fees before calculating the offset available?**

---

[1] Plaintiff states:

> The first question of significance is should a resident of Ohio receiving Michigan workers' compensation wage-loss benefits be treated differently than a citizen of the state of Michigan receiving the same Michigan workers' compensation wage-loss benefits? Are the citizens of the different states entitled to the same treatment under the law with respect to offset calculations for the very same benefit?
>
> Here, neither the ALJ nor the Appeals Council considered, much less applied, the Michigan POMS instructions. Though Claimant briefed the issue (even attaching a copy of the correct POMS to the appeal brief filed with the Appeals Council), the POMS instructions are not even mentioned in the Appeals Council decision. Assuming the POMS guidelines are not legally binding, nevertheless, perhaps an ALJ should at least acknowledge consulting them? Shouldn't the Administration at least acknowledge the existence of and follow its own duly adopted procedures? Aren't litigants entitled to rely on adopted POMS in making decisions about the implications of something as significant as a workers' compensation settlement? Is it not incumbent on the Appeals Council to acknowledge the failure to follow procedure set forth in accepted POMS before summarily affirming an ALJ mistake?

Plaintiff's Brief at PageID.371.

6

Plaintiff contends that the agency and the ALJ made flawed calculations regarding the first workers' compensation settlement, using a gross recovery of $172,500.00 rather than the net recovery to plaintiff of $127,360.66, which resulted in an inaccurate monthly offset of $465.00. Plaintiff's Brief at PageID.372. Plaintiff contends that the monthly offset should have been based on her net recovery, which would have been $343.36. *Id*. Plaintiff sets out a conclusory statement that, "[n]o matter which of the POMS are followed, there is no basis to offset the entire gross workers' compensation settlement" and that "[f]ailure to perform simple calculations is more than ample evidence of the Commissioner's reversible errors in this case." *Id*. Plaintiff's conclusory statement of a calculation error without any context, citation to the record, or legal authority does not demonstrate a basis for reversing the ALJ's decision. Accordingly, this claim of error is denied.

> **C. Did the ALJ and the Appeals Council commit reversible error in failing to conclude that the improperly calculated overpayment was not the "fault" of the claimant? Alternatively, is the claimant entitled to a waiver of all overpayment because of the Commissioner's calculation errors?**

In finding that plaintiff was at fault for the overpayment, the ALJ relied on three regulations, 20 C.F.R. §§ 404.506(a), 404.507, and 404.510(a).[2] PageID.39.

20 C.F.R. § 404.506 ("When waiver may be applied and how to process the request") provides in pertinent part:

> Section 204(b) of the Act provides that there shall be no adjustment or recovery in any case where an overpayment under title II has been made to an individual who is without fault if adjustment or recovery would either defeat the purpose of title II of the Act, or be against equity and good conscience.

20 C.F.R. § 404.506(a).

---

[2] The Court notes that 20 C.F.R. §§ 404.506 and 404.507 were amended on August 27, 2020, about nine months after the ALJ's decision on November 29, 2019. *See* 85 FR 52909-1 at *52914, 2020 WL 5039185.

Next, 20 C.F.R. § 404.507 (Fault") provides:

*Fault* as used in *without fault* (see § 404.506 and 42 CFR 405.355) applies only to the individual. Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment if such individual is not without fault. In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has. What constitutes fault (except for *deduction overpayments*—see § 404.510) on the part of the overpaid individual or on the part of any other individual from whom the Administration seeks to recover the overpayment depends upon whether the facts show that the incorrect payment to the individual or to a provider of services or other person, or an incorrect payment made under section 1814(e) of the Act, resulted from:

(a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or

(b) Failure to furnish information which he knew or should have known to be material; or

(c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

Finally, 20 C.F.R. § 404.510 ("When an individual is 'without fault' in a deduction overpayment") provides in pertinent part:

In determining whether an individual is "without fault" with respect to a deduction overpayment, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has. Except as provided in § 404.511 or elsewhere in this subpart F, situations in which an individual will be considered to be "without fault" with respect to a deduction overpayment include, but are not limited to, those that are described in this section. An individual will be considered "without fault" in accepting a payment which is incorrect because he/she failed to report an event specified in sections 203 (b) and (c) of the Act, or an event specified in section 203(d) of the Act as in effect for monthly benefits for months after December 1960, or because a deduction is required under section 203 (b), (c), (d), or section 222(b) of the Act, or payments were not withheld as required by section 202(t) or section 228 of the Act, if it is shown that such failure to report or acceptance of the overpayment was due to one of the following circumstances:

8

> (a) Reasonable belief that only his net cash earnings (take-home pay) are included in determining the annual earnings limitation or the monthly earnings limitation under section 203(f) of the Act.

20 C.F.R. § 404.510(a).

The ALJ set forth an extensive discussion to support her conclusion that plaintiff was at fault for causing the overpayment. Given the scope of the evidence under consideration, the Court will set out the ALJ's reasoning in its entirety:

> In a request for waiver of overpayment recovery form completed in November 2016, the claimant asserted that the overpayment was not her fault (Ex. B32, p. 1). She stated that her representative advised the Social Security Administration of all workers' compensation income, but that the benefits were credited incorrectly and that she did not receive as much workers' compensation as had been credited (Ex. B32, pp. 2-3). She indicated she advised the Social Security Administration about the change or event that made her overpaid, but that she was not sure of the dates (Ex. B32, p. 2). In a June 2018 brief to the Appeals Council, the claimant, by and through her representative, stated she did not make an incorrect statement to mislead the Social Security Administration nor did she fail to furnish information when requested (Ex. B37, p. 8). It was noted the amounts received were not suspicious as the combination of workers' compensation and Social Security disability payments were similar in amount to her former average monthly income (Ex. B37, pp. 8-9). The claimant, by and through her representative, asserted that her ability to understand and know that the Social Security Administration and State of Michigan workers' compensation system did not work together was limited by her education and background, describing the claimant as "an unsophisticated former production worker" (Ex. B37, pp. 8-9). It was stated that the Social Security Administration employee had no difficulty determining the facts upon inquiry in September 2013 (Ex. B37, p. 9).
>
> Fault as used in *without fault* applies only to the individual. "At fault" is defined as causing or helping to cause the overpayment, while "without fault" requires the individual be "blameless" in regards to creating the overpayment (POMS GN 02250.005). Pursuant to Social Security Administration policy, individuals are expected to exercise a high degree of care to prevent an overpayment and to report circumstances that may affect entitlement to benefits or the amount of benefits (POMS GN 02250.005). A failure to meet this standard of care or exhibit a lack of good faith leads to a finding of fault (POMS GN 02250.005). The degree of care varies and is dependent upon the circumstances causing the overpayment, along with the capacity for the person to understand she has been overpaid (POMS GN 02250.005). However, a lack of good faith is "evident" in a few circumstances, such as where the person has made an incorrect

9

statement the person knows or should have known is false, the person has failed to furnish information, which she knew or should have known, was material or the person has accepted payments she knew or should have known were incorrect (POMS GN 02250.005).  Although the Social Security Administration may have been at fault in making the overpayment, that fact does not relieve the claimant or any other individual from whom the Administration seeks to recover the overpayment from liability for repayment, if the claimant is not without fault.  In determining whether the individual is at fault, I will consider all pertinent circumstances, including the claimant's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) she has (20 CFR 404.507).

As noted above, workers' compensation can cause an offset of disability insurance benefits (POMS GN 02250.040).  However, reporting instructions regarding these benefits are given in: page 4 of the SSA-16-BK, the SSA-16-BK tearoff sheet, the Rights and Responsibilities booklet that is mailed with every award letter, the WC/PDB pamphlet No. 05-10018, and the reverse of Form SSA-546 (POMS GN 02250.040; *See also* POMS GN 02250.005).  Pursuant to Social Security Administration policy, it is generally assumed that an individual received the appropriate information (POMS GN 02250.005).  It is the worker's responsibility to obtain and, provide evidence to prove eligibility or a right to continue to receive benefits (20 CFR 404.704).

As demonstrated above, the claimant received Social Security disability benefits pursuant to Title II based on a March 2010 decision, with an established onset date of June 27, 2008 and entitlement to benefits beginning in December 2008 (Ex. Bl; B5; B7-B8; B12; and B20).  As demonstrated above, the claimant subsequently began receiving periodic workers' compensation payments due to temporary total disability during the period beginning September 20, 2010 with the first check dated October 7, 2010 (Ex. B2).

The record contains no evidence that the claimant reported receipt of periodic payments to the Social Security Administration after such payments were awarded (*See* Ex. B 1-B49).  As noted above, an initial redemption order was issued on July 30, 2013 (Ex. B3, p. 1).  The record indicates that paperwork regarding the lump sum settlement was subsequently submitted (Ex. B6, p. 1; and B48, p. 34).  In attempting to obtain clarification of the lump sum settlement, a Social Security Administration district office employee contacted Ms. Tate of Citizens Management, Inc., who sent additional information regarding the claimant's workers' compensation payments (Ex. B6, p. 1).  At that time, a payment listing was submitted, which documented temporary total disability payments for the period from September 20, 2010 through July 29, 2013, with the first check issued in October 2010 (Ex. B3).  The record indicates the Social Security Administration was previously unaware of such periodic payments (Ex. B6, p. 1; and B48, p. 34).

The record demonstrates the claimant was informed of the effect of receiving workers' compensation on her Social Security disability benefits (Ex. Bl, p. 9 and B35, p. 1). In her March 2010 decision, she was advised that the workers' compensation offset provisions might be applicable (Ex. Bl, p. 9). Additionally, the record demonstrates that in April 2010, the claimant signed a workers' compensation update form in which she noted that she was not receiving workers' compensation payments and that she had not received a lump sum (*See* Ex. B35, p. 1). In this letter, she was again advised that the receipt of workers' compensation benefits affect the amount of Social Security benefits she could be paid (See Ex. B35, p. 1). Furthermore, pursuant to Social Security Administration policy, the claimant would have been advised of most reporting requirements in her initial application and she would have received a "Your Social Security Rights and Responsibilities" pamphlet with her award letter that would have addressed workers' compensation benefits (POMS GN 02250.005 and POMS GN 02250.040). Although the claimant appears to have reported the July 2013 redemption order through which she was awarded a lump sum settlement, there is no evidence that she notified the Social Security Administration about the receipt of her periodic workers' compensation payments (Ex. B2-B7; B21; B35; and B48). It was not until Ms. Tate of Citizens Management, Inc., following a request from the Social Security Administration for further information about the lump sum settlement, submitted payment records documenting the periodic payments that the Social Security Administration was made aware of such periodic payments (Ex. B2-B4; B6; B35; and B48). Therefore, based on the record as a whole, I find the claimant failed to furnish information that she knew or should have known was material (20 CFR 404.507 and POMS GN 02250.005).

I considered whether physical, mental, educational, or linguistic limitations affected the claimant's ability to comply with reporting requirements. However, I note that the claimant has a high school education (Ex. Bl, p. 8). At the time of her March 2010 decision, no recommendation for consideration of a representative payee was made (Ex. B 1, p. 9). The record does not show that the claimant had a representative payee at any time during the period at issue (Ex. B20, p. 1; *See also*, *generally*, Ex. B l-B48). The record suggests she successfully and timely returned paperwork about the receipt of workers' compensation in April 2010, which was before she was awarded workers' compensation benefits (Ex. B2-B4 and B35). The record demonstrates that submitted information regarding the lump sum settlement was submitted soon after the redemption order was issued (Ex. B6, p. 1; and B48, p. 34). Accordingly, I find the claimant does not have a physical, mental, educational, or linguistic abilities or limitation that affected her ability to comply with reporting requirements.

Accordingly, based on reasons set forth above, I find the claimant was not without fault in creating the overpayment as the record demonstrates that she failed to furnish information that she knew or should have known was material. As the claimant is not without fault, the issues of whether recovery would be against equity and good conscience or if it would defeat the purpose of the Social Security Act,

11

including any ability to repay, are not at issue and, therefore, have not been addressed.

PageID.39-42. After reviewing the record, the Court concludes that the ALJ's determination is supported by substantial evidence and legally sound.

The gist of plaintiff's claim is that "the error here was on behalf of the Administration, not the individual" (presumably in miscalculating the monthly offset from the lump sum payments) and that plaintiff "did not make an incorrect statement or fail to furnish information." Plaintiff's Brief at PageID.373. As discussed, plaintiff's reference to the lump sum payments is irrelevant. The overpayment at issue is based upon periodic payments made to plaintiff before the lump sum payment on July 30, 2013, *i.e.*, from October 2010 through July 2013, Plaintiff does not address the factual findings, exhibits or legal arguments set out in the ALJ's decision.[3] Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

The ALJ's decision is supported by substantial evidence and legally sound. Accordingly, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: September 25, 2023                     /s/ Ray Kent
                                              RAY KENT
                                              United States Magistrate Judge

---

[3] In this regard, the Court notes that in this proceeding, plaintiff did not file a reply brief to Defendant's Brief as allowed under the Notice Regarding Consent and Directing Filing of Briefs (ECF No. 11).